## HELMERICH & PAYNE, Inc., v. KEENEY.

No. 26146.   Oct. 20, 1936.

Thomas J. Wiley and Harry G. Davis, for plaintiff in error.

Forrester Brewster, for defendant in error.

PER CURIAM.  This is an action by Glen Keeney against Helmerich & Payne, Incorporated, a corporation, to recover a balance due for work and labor performed in the drilling of a well for oil and gas.  The following facts seem to be fairly well established by the evidence:

Carmi Allred and G. M. Keeney, the plaintiff, were drilling contractors and owned a string of tools.  On November 14, 1932, they entered into a contract to drill an oil well.  They were to receive $1 per foot, the defendant to furnish casing, fuel, and water; the contractors were to run the casing, drill in, run tubing and rods; the defendant agreed to carry compensation, the expense thereof to be charged to the contractors; and it was also agreed that if the well was shot and cleaned out, day work should be paid for at the rate of $25 per day.  The extra work in cleaning out and fishing amounted to 40 days.  The contractors rendered a statement for $2,769.50. The defendant was dissatisfied and an agreement was reached between the parties, whereby the account was reduced $560. The defendant then paid the account of $2,-209.50.  The disputed issue involves the deduction of $560.

A trial was had before the court without a jury and judgment rendered in favor of the plaintiff for $280, and the defendant seeks a reversal of that judgment.  The plaintiff, Keeney, claims he is entitled to one-half of the deduction of $560 upon the basis of the following agreement between him and Mr. Broadhurst, the managing officer of the defendant:

"A. Mr. Broadhurst made me a proposition as to settlement.  Q. What was that proposition?  A. He figured it down from $25 a day.  He said we had a little trouble out there and all, however he didn't give me credit for the trouble, he didn't figure it was my fault, but the company was objecting to the payment of the bill on account of it being a small well, and he said if I would figure it down—knock off $14 and come down to $11 a day, he would either buy an interest in the tools and take the note out of the bank and buy the tools out with my part, or he would give me contracts whereby I would make ten times more than the amount of the claim.  Q. What did you say to that?  A. I said: 'Will you do that?' and he said he would, and I said: 'Let's go up and see Mr. Allred,' and he said: 'No, I want to talk to Mr. Allred my-

self,' and he said: 'I will go up and settle with him, make some agreement with him, and I will come back, and whatever I do, I will let you know.' So he did. He came back and said he had settled with Mr. Allred. Didn't tell me on what grounds, and for us to go up and make out a new bill as per his figures, on this bill of $2,209.50. Q. What amount was deducted, in round figures, from the amount which represented the work you had done under the contract? A. $560. The Court: One-half of which you claim is now coming to you? A. Yes, sir. Q. Now, Mr. Keeney, when, if Broadhurst indicated in his conversation, did he say the work would be furnished? A. Why, immediately. Q. Subsequent to that conversation * * * did he say anything about getting the new bill to him? A. Yes, he told me to go up and make out a new bill, Allred and I to make out a new bill, and mail it to him that evening, and he would immediately pay the balance of it. Q. What did you do? A. Went up to Mr. Allred's and we made out a new bill and mailed it to him that evening."

The new bill, dated June 29, 1933, was for the account of Keeney & Allred, and was made out for $2,209.50. On July 3, 1933, Mr. Allred gave to Mr. Keeney the following letter:

"Boynton, Okla., July 3, 1933
"William Broadhurst, Supt.
    "Helmerich & Payne, Inc.
    "Tulsa, Okla.
"Dear Sir:

"You are hereby authorized to pay the balance due Keeney and Allred for drilling Sitterman No. 7, which balance is $390.00 less $107.61 I owe you, to G. M. Keeney, Sr.     Yours very truly,
                "Carmi Allred."

The defendant never furnished plaintiff any further work, and plaintiff says he would not have made the deduction but for the agreement which the defendant made.

Mr. Allred testified that he promised Mr. Keeney to join in the suit against the defendant, but subsequently saw Mr. Broadhurst and promised him not to sue the defendant and gave to him the following letter:

"Tulsa, Oklahoma, December 2nd, 1933.
"Helmerich & Payne, Inc.
    "916 Philtower
    "Tulsa, Oklahoma
"Gentlemen:

"On or about November 14th, 1932, we entered into an agreement with you to drill a well known as Number Six on the Sitterman lease southeast of Boynton, Oklahoma. During the drilling of this well you advanced us money from time to time and also paid some labor bills for us. Before the completion of this well we lifted the casing and the well was shot at which time several joints of the last string of casing was shot off and damaged. It became necessary to pull this pipe and considerable time and expense was entailed in getting this well in shape. By mutual agreement between your company's representative, Mr. Broadhurst, and ourselves we assumed part of the blame for this trouble. At this time we agreed to go ahead and finish the well up, you to pay us just the actual labor cost, which has been paid and settlement in full for the drilling of this well has been made by your company. There is nothing due us at this time and no promises or allegations of any nature or kind entered into to the settlement of the drilling of this well.

"At the time of the drilling of this well the tools were owned by Carmi Allred and G. M. Keeney, Sr., however, the American State Bank at Boynton, Oklahoma, had a mortgage on these tools. Neither Mr. Keeney nor Mr. Allred could sell those tools without the consent of both parties as we were both interested in the equity.

"We have had considerable dealings with your company and you have at all times manifested a fair spirit and we have always found you willing to do the fair thing.
                "Very truly yours,
            "(Signed)  Carmi Allred
            "Carmi Allred & G. M. Keeney."

Mr. Allred testified:

"Q. And about that time you were negotiating to do some work for Helmerich and Payne? A. Right after that time. Q. But you had been talking to them before that time about doing some work for Helmerich & Payne? A. Before. The Court: Before you had the conversation and signed the statement? A. No, sir. I was not at work and one of his men came and said he wanted a well cleaned out. Mr. Brewster: You had that information, that he wanted that work done and that was your business? A. Yes. Q. And shortly after that Mr. Broadhurst showed up and talked to you about the claim Mr. Keeney was asserting for the balance owing on this well, didn't he? A. Well, I think that conversation was brought up. Q. And he said he wanted you to go ahead and do some work for him? A. Yes. Q. And you did do that? A. Yes. Q. You later got a contract from him? A. Yes. Q. And you needed the contract? A. Yes. * * * Q. All right. Mr. Broadhurst told you in this conversation when you were talking about reducing your claim for this well that he was going to give you some work, didn't he? A. I'll tell you what the conversation was. Q. Just answer the question, isn't that what he told you? A. He told

me that they would have work coming up. Q. And said if you would reduce the amount you claimed you would get some of the work? A. He said I wouldn't lose anything by it. Q. And he told you he was settling with you personally and he was going to settle with Mr. Keeney for his part? A. He said he had already talked to Keeney and he was going to settle it, and said: 'We have been friends for a long time and let's not fall out about this.' "

Mr. Allred further testified:

"Q. You don't have any interest in this lawsuit? A. No, sir. The Court: And are not claiming anything? A. No, sir."

While it is true that Keeney and Allred were partners in the drilling of the well, yet, an account stated was agreed upon, so far, as the partnership account was concerned, which account was paid. However, in arriving at the agreement for the account stated, the defendant dealt with each of the partners separately, with the result that a deduction of $560 was made, thereby separating the amount deducted from the partnership account. The evidence shows that the defendant, through its authorized representative, induced both Keeney and Allred to agree to the deduction and separation of $560 from the partnership account, and made a promise to the plaintiff to buy an interest in the tools, or give him contracts whereby he could make more than the amount of the claim, although the defendant denied having made such promise, but the court, by its judgment, must have found otherwise.

The defendant never purchased an interest in the tools, or furnished any work to the plaintiff, and the plaintiff being the owner of one-half of the amount deducted and separated from the partnership account, the consideration for the deduction failed, and the plaintiff thereupon was restored to his right to one-half of the amount which had been separated from the partnership account. The owner of the other half, Carmi Allred, wrote a letter to the defendant's authorized representative, authorizing him to pay the balance due Keeney and Allred to G. M. Keeney, Sr., and testified at the trial that he had no interest in the suit, and made no claim against the defendant.

If any partnership relations continued after arriving at the account stated, they were terminated, abandoned, and dissolved by the action of Carmi Allred. Forbes v. Becker, 150 Okla. 281, 1 P. (2d) 721.

Under the facts, as disclosed by the record, the law of partnership does not apply.

In Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 P. 443, it was contended that recovery was sought on a partnership indebtedness without joining all partners. This court held:

"The first contention is that the action is brought by the defendant in error, J. K. Gano, when in truth and in fact the evidence shows that the alleged transaction and contract had between plaintiff in error and the defendant in error was by and for the firm of McCoy & Gano, and that therefore the action had been improperly brought. We think counsel is correct in his contention, which in effect is that where a contract is made by one partner for the firm, and it is shown on its face to be a firm transaction, all partners must join in an action thereon, and that in suits by or against a partnership, all the partners must join or be joined. But in the case at bar, the petition clearly alleges that the transaction between the plaintiff in error and the defendant in error was had for the use and benefit of the defendant in error, and there is no suggestion in the petition that any one other than plaintiff in error was interested in the contract. The court, having found the issues generally in favor of defendant in error, necessarily found that defendant in error was the proper party to maintain this action and that defendant in error was the real party in interest. Bohart v. Mathews, 29 Okla. 315, 116 P. 944. An examination of the record discloses an abundance of evidence, in our judgment, to support this finding. Where the testimony is oral and conflicting, and the finding of the court is general, such finding is the finding of every special thing necessary to sustain the general finding, and is conclusive on this court on all questions of doubtful and disputed fact. Alcorn v. Dennis, 25 Okla. 135, 105 P. 1012."

Again, in Evans v. Burleson, 127 Okla. 290, 260 P. 743, it was held:

"Where a contract is made by one partner for the firm and it is shown on its face to be a firm transaction, all partners must join in the action thereon; but where there is no mention of a partnership in the pleadings and where the testimony is oral and conflicting as to whether the action is for the use and benefit of the plaintiff or for the partnership, the general finding of the court on all questions of doubtful and disputed facts is binding upon this court, where there is any evidence reasonably tending to support the same."

In the body of the opinion, we said:

"There is no suggestion of a partnership in the pleadings, but it is the contention of plaintiff in error that when the evidence developed the fact that it was a partnership transaction and only one of the partners

was a party to the action, a demurrer should have been sustained to the evidence. As sustaining their contention they cite a number of authorities, including Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 P. 443, and Hassen v. Rogers, 123 Okla. 265, 253 P. 72.

"With these authorities we find no fault. They undoubtedly state the law, but, unfortunately for the contention of plaintiff in error, Burleson testified positively that it was definitely agreed and understood between himself and McLeod that the seed in the two bins at Rush Springs should be sold, and 'if there is a clear dollar in them we will go fifty-fifty, if there is a loss I am the man to lose.' He further testified that there was a loss.

"Nowhere in McLeod's testimony does he intimate that he claims any interest in the transaction, and, whatever their relations might have been prior to this 'closing out' deal, all the evidence on this subject indicated that McLeod had no interest therein, and, if he did not have, the authorities cited by counsel for plaintiff in error have no application."

Neither is Carmi Allred a necessary party to this action. He admitted that he had no interest in the subject-matter of the suit, and whatever the relations of Keeney and Allred might have been prior to the fixing of the amount due the partnership, the evidence is undisputed that Allred had no interest in the subject-matter of the suit.

This court held, in Reynolds v. Schmidt, 93 Okla. 33, 219 P. 405:

"A proper party plaintiff is one who has an interest in the subject-matter of the action, and is interested in the relief demanded.

"One who has no interest in the subject-matter of the action, or who is not interested in the relief demanded, is not a proper party plaintiff."

In Stinchcomb v. Patterson, 66 Okla. 80, 167 P. 619, this court quoted the definition from 4 Words and Phrases, 2d Series, p. 132, of "real party in interest," as follows:

"The test of whether one is the real party in suit is, Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation? The rule is stated in a recent ably written work thus: 'The real party in interest within the meaning of the provision of the Code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in or connection with it.' "

The question of partnership is not raised in the pleadings, and it is the rule in this jurisdiction that where there is no mention of a partnership in the pleadings, and where the testimony is oral and conflicting as to whether the action is for the use and benefit of the plaintiff or for the partnership, the general finding of the trial court on all questions of doubtful and disputed facts is binding upon this court, where there is evidence reasonably tending to support the same.

The contention is made that the trial court committed error in admitting incompetent, irrelevant, and immaterial evidence. We have examined the record and find no error in that respect.

The judgment is affirmed.

The record contains a copy of a supersedeas bond executed by United States Fidelity & Guaranty Company as surety, and the defendant in error having called the same to the attention of the court, with the request that judgment be entered on the bond against the surety, it is the order of the court that judgment be entered on the supersedeas bond against the United States Fidelity & Guaranty Company for the sum of $280, with interest at 6 per cent. from the 14th day of May, 1934, and the costs in said cause.

The Supreme Court acknowledges the aid of Attorneys Fred Suits, Tom W. Garrett, and H. L. Douglass in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Suits and approved by Mr. Garrett and Mr. Douglass, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.